UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EVIN DeVAN,<br><br>              Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA (CCA), JASON ELLIS, JOHNATHAN MELDRUM, C/O KELLY, C/O KELLY, JUAN IBARRA, C/O GOINDACKER, JOHN AND JANE DOES I-XX,<br><br>              Defendants. | Case No. 1:15-cv-00432-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights action are Defendant CCA's Motion to Dismiss for Failure to State a Claim (Dkt. 35), Motion to Dismiss for Lack of Prosecution (Dkt. 39), and Motion to Amend/Correct Order (Dkt. 41). The motions are now fully briefed. Having considered the parties' arguments and reviewed the record in this matter, the Court enters the following Order.

## BACKGROUND

1. **History of the Case**

10/30/13       Plaintiff was assaulted by Inmate Allen, after Plaintiff had pressed his emergency security button about 15 times over 10 minutes with no response from ICC correctional officers. (Dkt. 48, p. 4.)

**MEMORANDUM DECISION AND ORDER - 1**

| | |
|---|---|
| 09/17/2015 | Plaintiff filed his original Complaint in this action, asserting that ICC officials failed to protect him from a known-dangerous inmate after Plaintiff attempted to articulate his concerns about his safety and officials ignored him. The inmate assaulted Plaintiff, and he suffered "significant injury." |
| 12/09/2015 | Judge Dale issued an Initial Review Order requiring Plaintiff to file an amended complaint to state more specific facts about who did what and when. |
| 01/07/2016 | Plaintiff filed an Amended Complaint. |
| 06/13/2016 | Judge Dale issued an Order on the Amended Complaint, concluding that Plaintiff had failed to follow the instructions for amendment, but, because he may not have had access to the information he needed to amend the Complaint, the Court would allow him to proceed against CCA, the entity, for failure to respond to Plaintiff's emergency call immediately (contrary to a written CCA policy), although the Court explained that the claim against CCA might not survive summary judgment. (Dkt. 14.) |
| 07/06/2016 | CCA attorneys appeared in the case. |
| 08/15/2016 | CCA filed an Answer to the combined Complaint and Amended Complaint (Dkts. 23, 3, 13.) |
| 09/13/2016 | Plaintiff provided an initial disclosure statement to Defendant, along with 29 pages of exhibits. (Dkt. 49, p. 3.) |

| | |
|---|---|
| 10/17/2016 | The Court issued an order containing deadlines for amendment and discovery. Amended pleadings were due no later than December 12, 2016. Disclosures, depositions, and discovery were to be completed no later than February 17, 2017. Amended pleadings were due no later than December 12, 2016. |
| 11/09/2016 | Defendant CCA served Plaintiff with a first set of discovery requests. To date, Plaintiff has not responded to the discovery requests. |
| 12/12/2016 | Deadline for filing amended pleadings. By or near this time, Defendant had disclosed over 2,000 pages of documents to Plaintiff, along with audio or video recordings (Dkt. 52; also referenced in Dkt. 35-1.) |
| 12/15/2016 | Plaintiff filed his Second Amended Complaint (timely per the mailbox rule). |
| 12/29/2016 | Defendant filed a Motion to Dismiss for Failure to State a Claim. (Dkt. 35.) |
| 01/19/2017 | Counsel for Defendant made an effort to meet and confer with Plaintiff to settle the discovery dispute, but Plaintiff did not respond to the correspondence sent to him. |
| 02/08/2017 | Plaintiff did not file a response to the Motion to Dismiss, but filed a Motion to Stay or Appoint Counsel. (Dkt. 37.) |

| | |
|---|---|
| 02/10/2017 | Plaintiff's deposition was scheduled for 10:00 a.m. Plaintiff was uncooperative and the deposition was not held, though counsel and the court reporter traveled to the prison to take it. |
| 02/17/2017 | Deadline for completing all discovery. (Dkt. 30.) Plaintiff still had not responded to Defendant's discovery requests. |
| 03/01/2017 | Defendant filed a Motion to Dismiss for Failure to Prosecute. (Dkt. 39.) |
| 04/01/2017 | Plaintiff failed to respond to the Motion to Dismiss for Failure to Prosecute within 30 days. |
| 04/04/2017 | Defendant filed a Motion to Amend/Correct Order. (Dkt. 41.) |
| 04/18/2017 | The Court ordered that, no later than June 2, 2017, Plaintiff must file a response to Defendant CCA's Motion to Dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted (Dkt. 35) and Motion for Dismissal for Lack of Prosecution (Dkt. 39), which is based on Plaintiff's failures to cooperate with Defendant's discovery requests and deposition, no later than June 2, 2017. Plaintiff was issued a first warning that failure to respond could result in a Rule 41(b) dismissal. The case was reassigned to the District Court. (Dkt. 44.) |
| 05/01/2017 | Plaintiff notified the Court that a document entitled "Amended Complaint" (Dkt. 17) should have been filed in a different case. This is of no consequence in the timeline, because Plaintiff had filed a |

| | |
|---|---|
| | superseding Second Amended Complaint on December 15, 2016. (Dkt. 34.) |
| 05/23/2017 | The Court issued another Order that Plaintiff must file a response to CCA's pending dismissal motions no later than June 2, 2017. The Court issued a warning to Plaintiff that the failure to respond to discovery requests and failure to cooperate with depositions could result in dismissal without further notice pursuant to Rule 41(b). (Dkt. 46.) |
| 06/05/2017 | Plaintiff filed a Response to the two Motions to Dismiss. Plaintiff also filed a Third Amended Complaint beyond the amendment deadline, which was December 15, 2016. |

## MOTION TO DISMISS FOR LACK OF PROSECUTION

Federal district courts have broad discretion to "impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Industries*, 709 F.2d 585, 589 (9th Cir. 1983); Fed. R. Civ. P. 37. The following factors must be considered when evaluating whether to enter terminal discovery sanctions of dismissal or default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987).

1. **Plaintiffs' Arguments Regarding Discovery Responses**

On June 5, 2017, when Plaintiff finally filed his response to the Motion to Dismiss for Failure to Prosecute, he still had not provided any written responses to Defendant's discovery requests that were propounded on November 9, 2016. Plaintiff provides various excuses why he has not responded to the discovery, but none shows that Plaintiff could not have responded to at least some of the discovery requests in a timely manner, while objecting to others, especially given the fact that the discovery requests came with extensive, detailed instructions. (Dkt. 39-3.) Plaintiff says he could not respond because the discovery requests "require[d] comprehensive review of evidence and discovery." (Dkt. 49, p. 3.) However, even after all the materials provided by Defendant, Plaintiff still has not responded to the discovery.

While it is true that Plaintiff had a bout of difficulty using the phones because of trouble with his phone code on January 19, 2017, that does not provide an excuse for him to fail to respond in writing to any request in December 2016, to fail to object in writing to any request in December 2016, or to send a letter in lieu of the phone call to discuss discovery disputes in January 2017. Even after Defendant filed the Motion to Dismiss, Plaintiff did not respond to it in a timely manner, nor did he provide responses to any discovery request.

Plaintiff also states that Defendant did not provide "crucial interviews and reports substantiating Plaintiff's primary claim." (Dkt. 49, p. 3.) He cites the audiotape of Investigator Chris Smith's interview with Mr. Allen, the perpetrator, as key evidence underlying his claims. (*Id*.) Defendant responds that Smith has made a good faith effort to

**MEMORANDUM DECISION AND ORDER - 6**

search for the audio of that interview, and has been unable to find it. (This is one of the problems that often occurs when complaints are filed years after the incident has occurred.) Further, CCA never itself had custody of Smith's audio-recording, but Mr. Smith has provided his report and contemporaneous notes of the interview, both of which CCA disclosed to Plaintiff. (Dkt. 52, p.3 n.2.)

Plaintiff has not explained how his lack of the audiotape has caused him to be unable to respond to discovery; in fact, this excuse appears groundless. The Court finds Defendant's reply persuasive—"Plaintiff has failed to even partially answer interrogatories and requests for admission that could presumably be answered based solely on his own knowledge and experience, and that do not require any review or production of documents." (Dkt. 52, p. 2.)

Furthermore, Defendant's failure to disclose is a separate issue from Plaintiff's failure to respond to discovery. Plaintiff does not provide written correspondence from him to Defendant's counsel attempting to resolve his discovery dispute, nor has he brought such a dispute to the Court's attention in a motion to compel. Defendant responds that it has provided everything available. Parties cannot be compelled to provide what they do not have. Plaintiff has provided no evidence showing that any additional documents relevant to the claims at hand exist.

2. **Plaintiff's Refusal to Cooperate with Deposition**

Plaintiff's deposition was set for 10:00 a.m. on February 10, 2017, by written deposition notice. (Dkt. 39-5.) Plaintiff alleges that the visitation sergeant notified

**MEMORANDUM DECISION AND ORDER - 7**

Plaintiff that Mr. Naylor had called to schedule the deposition for 9:30 a.m.; however, depositions must be scheduled by written notice, not phone calls, and Plaintiff has submitted nothing corroborating this allegation.

Mr. Naylor and the court reporter arrived at 9:50 a.m. Plaintiff alleges that he left his cell at 9:00 a.m., when movement was permitted; waited for some time; and then left the deposition area between 10:15 and 10:30, when movement was permitted again. However, Plaintiff does not state that he made any effort to determine what was happening with the deposition during the time period he was waiting.

Plaintiff left before the deposition could be started, but then returned to the deposition area when correctional officers told him it was going to proceed. Therefore, regardless of any time mix-up, as alleged by Plaintiff, he could have participated in the deposition.

Plaintiff then obstructed the deposition by refusing officers' command to tuck in his shirt to comply with prison rules. He states that he had been given "several frivolous orders"; however, he does not state what they were, and, regardless, inmates are required to obey officers' orders, whether the inmates deem them frivolous or not. He was then taken to segregation, successfully disrupting the deposition. Defendant's counsel had planned to further discuss the lack of discovery responses with Plaintiff at the deposition, but was unable to do so. In addition, because Plaintiff did not return any responses before the deposition, Defendant's ability to prepare for the deposition was obstructed, regardless of whether Plaintiff had provided some disclosures by that point.

### 3. Analysis of Whether Sanction of Dismissal is Appropriate

The Court considers the four factors relevant to whether a sanction of dismissal should be imposed upon an uncooperative plaintiff. The first factor, the public's interest in expeditious resolution of litigation, favors dismissing Plaintiff's case. *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). From the start of the litigation, Plaintiff has been unwilling to provide the who, what, and when of the facts of his case. It seems he is more on a fishing expedition than on a quest to right a wrong based on clear and definite facts. There is no path to an *expeditious* resolution of litigation in this matter, or, for that matter, *any* resolution, because Plaintiff refuses to cooperative with discovery, which is a necessary prerequisite to having the merits of the claim heard.

The second factor is the Court's need to manage its docket. A court must have the ability to manage its docket without being subject to routine noncompliance of litigants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Plaintiff's case has been pending for two years, and yet Plaintiff has obstructed all forms of discovery, causing the case to remain at a standstill instead of moving forward toward resolution. *See Yourish*, 191 F.3d at 990 ("Plaintiffs' failure . . . had allowed the 'Plaintiffs to control the pace of the docket rather than the Court.'"). Here, Plaintiff's obstruction has caused the Court to spend undue time on his case, while other prisoner civil rights cases—where the plaintiffs are implementing case management plans without problems—wait in the queue behind Plaintiff's case. Plaintiff also failed to respond to the pending Motion for Dismissal in this case in a timely manner, causing the Court to have to issue an Order warning

Plaintiff of the possibility of dismissal under Federal Rule of Civil Procedure 41(b). (Dkt. 46.)

The third factor, risk of prejudice to the other party, is high. The alleged harms occurred in 2013. It is now late 2017. Defendant still does not know exactly what Plaintiff is alleging against whom. Minds and memories dim as time marches on. Defendant was unable to prepare for depositions properly without Plaintiff's timely responses to discovery. Defendant is unable to preserve evidence if they do not know exactly what Plaintiff's claims are. Plaintiff's actions have impaired Defendant's ability to proceed to trial. *See Malone v. United States Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987).

Further, Defendant has also suffered the loss of paying their attorney and the court reporter for the failed deposition; it takes extra time and expense for a court reporter to travel to the prison, rather than simply to counsel's office. Attorney fees and costs for the deposition alone were $471.48. The Court has no confidence that, should it allow the action to proceed and Plaintiff to be re-deposed, that he will not obstruct the deposition a second time, causing an equal or greater loss of fees and costs for Defendant. In addition, Plaintiff's actions have caused Defendant to incur other attorney fees in this action to attempt to coerce Plaintiff's compliance with the Federal Rules of Civil Procedure.

The Court finds that the fourth factor, the public policy favoring the disposition of cases on their merits, weighs slightly against dismissal. Public policy generally favors reviewing the merits of a litigant's claims, rather than disposing of claims on procedural

grounds. However, because Plaintiff's operative pleading (Dkt. 34) is still extraordinarily vague, there appears to be little merit to Plaintiff's claims.

Plaintiff's decision to file his Third Amended Complaint outside the time limits ordered by the Court is another example of his refusal to follow Court Orders and his disregard for Defendant's efforts to defend against his allegations of wrongdoing. Indeed, Plaintiff's lack of effort to pare down his Third Amended Complaint despite instructions to include only plausible claims is reflective of his general position to make this litigation larger and more difficult, rather than pointed and streamlined.

Because the Third Amended Complaint is too late, and Plaintiff does not have adequate excuse for the lateness, the Court will strike it from the record.

The fifth and final factor is the availability of less drastic sanctions. Plaintiff has continued to obstruct discovery. He also asks the Court to grant him special privileges contrary to prison rules regarding the taking of a deposition. There is nothing in the record that suggests Plaintiff will comply with either a Court order to flesh out the facts of his claims or Defendant's efforts to learn those facts through discovery under the Federal Rules of Civil Procedure. Therefore, lesser alternative sanctions would not be appropriate.

The Court twice previously warned Plaintiff, in writing, that failure to provide responses to Defendant's discovery would result in dismissal of this case. Yet, Plaintiff has chosen to ignore the Court's warnings, and he has provided only groundless excuses for his continuing refusal to cooperate with discovery. In *Yourish*, the Ninth Circuit Court approved of use of dismissal as a sanction in another case where the court had

MEMORANDUM DECISION AND ORDER - 11

given an oral, rather than a written, warning. 191 F.3d at 987 (citing *In Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974).) Here, the Court will not award Defendant the fees and costs for the deposition, as Defendant requested, but will dismiss Plaintiff's entire case.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss for Lack of Prosecution (Dkt. 39) is GRANTED.

2. Defendant's Motion to Modify Scheduling Order (Dkt. 41) is DENIED as MOOT.

3. Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 35) is DENIED as MOOT.

4. Plaintiff's Third Amended Complaint (Dkt. 48) is STRICKEN.

5. Plaintiff's entire case is DISMISSED with prejudice for failure to comply with discovery and Court orders, as set forth above.

Dated: **September 20, 2017**

Honorable Edward J. Lodge
United States District Judge